## FULWELL *v.* BROWN.

1. VENDOR AND PURCHASER—SALES—WARRANTY OF TITLE—EVIDENCE.

> The modern and general rule is that a sale of personal chattels implies an affirmation by the vendor that the chattels are his, and he therefore warrants the title, unless it appears by the facts and circumstances of the sale that the vendor did not intend to assert ownership, but only to transfer such interest as he might have in the chattel sold.

2. SAME.

> On a bill for the reformation of a contract for the purchase of a lease of a hotel and its appurtenances, and to enjoin the defendant from negotiating certain promissory notes given in payment therefor and from enforcing a chattel mortgage given to secure the payment of said notes, on the ground of the failure of title in defendant of certain machinery connected therewith, evidence examined, and *held*, insufficient to establish that defendant claimed to own said machinery or attempted to transfer a greater title in said premises than he possessed, and that the bill was properly dismissed.

Appeal from Wayne; Brooke, J. Submitted February 24, 1909. (Docket No. 55.) Decided May 25, 1909.

Bill by George Fulwell against John H. Brown for the reformation of a contract, and to enjoin the negotiating of certain promissory notes and from enforcing the terms of a chattel mortgage given to secure their payment. From a decree dismissing the bill, complainant appeals. Affirmed.

*Bowen, Douglas, Whiting & Eaman,* for complainant.

*Maybury, Lucking, Emmons & Helfman,* for defendant.

On September 16, 1905, the defendant was engaged in the operation of the Hotel Normandie in the city of De-

troit. His lease of the premises from the owner of them is dated April 30, 1904, and the term created by the lease expires May 1, 1914. He covenanted with the lessor to make necessary repairs to the interior of the building, the machinery, elevator, and other appliances. The said lease contains the following provision:

"This lease is made to take the place of a certain other lease made by said first party to one Charles Roe, dated December 31, A. D. 1901, the rights of said Roe having been acquired by said Brown, which lease is hereby surrendered and canceled."

In the building were some large steam boilers, bricked in, an electric lighting plant, two engines, some steam pumps, and various other machinery which appeared in an inventory kept by the defendant, and appeared upon the regular monthly balance sheets made up by the proper employés of the hotel at a value somewhat in excess of $7,000. The complainant, introduced to this property and to the defendant by a broker, after an examination of the hotel property and on September 15, 1905, submitted to the defendant a proposition reading as follows:

"*Dear Sir:* I beg to submit the following offer to purchase your title and interests in 'The Normandie' Hotel, Detroit, Mich.:

"*First*, I agree and will pay you for the lease, furniture, and such machinery as you own and now contained in said Normandie Hotel, also all fixtures, equipment and good will, viz., thirty ($35,000.00) five thousand dollars.

"Furthermore, I agree to purchase and pay you additional for all merchandise (at cost price) contained in said hotel at date of transfer—estimated about $3,000 more or less, said stock not to exceed $4,000. I also agree to pay you for unexpired insurance and unexpired liquor license —prorated; payments to be made as follows: Ten ($10,-000.00) thousand dollars in cash on date of transfer of your title and interests in 'The Normandie' and possession given me. Balance at deferred payments to be discharged and paid in the following manner:

"A series of certain promissory notes will be issued and signed by myself bearing six (6%) per cent. interest, which amounts will cover my entire indebtedness to you.

At end of each calendar month I will pay you one($1,000.-00) thousand dollars for a period until January 31, 1906. After this date and at end of each calendar month following I agree to pay you fifteen ($1,500.00) hundred dollars, to continue these payments monthly and in such amounts until the full amount due is paid.

"Further, you are to have and hold a mortgage (sufficient to cover indebtedness) on lease, furniture, fixtures and all equipment in and of the Normandie Hotel—all notes to read with privilege of paying before maturity bearing interest rate as above mentioned.

"GEORGE FULWELL.

"Sept. 15th, '05."

On the next day the parties entered into an agreement, dated that day, but executed some five days later, in and by which defendant agreed to sell—

"All his right, title and interest in and to a certain lease of the Normandie Hotel property in the city of Detroit, Wayne county, Michigan, and the good will of said business, together with all furniture, fixtures, equipment and machinery, now owned by said Brown situated and contained in the building known as the 'Normandie Hotel' for the sum of thirty-five thousand dollars."

There is no express warranty of the title to any of the property agreed to be sold and no enumeration or schedule of the property. Certain other personal property was to be inventoried and paid for in addition to the sum of $35,000, and another additional sum was to be paid on account of the assignment of unexpired insurance policies and the city and county liquor licenses, and the unpaid indebtedness was to be secured by a chattel mortgage to be executed by the complainant to the defendant and to cover and be a lien upon all of the property agreed to be sold with additions and betterments. Later on, this agreement was performed; the property being transferred to the possession of the complainant, the chattel mortgage executed, the policies of insurance assigned, and the complainant entering upon the business of keeping the hotel. Payments were made pursuant to the agreement.

On or about October 10, 1906, the complainant filed his

bill of complaint against the defendant, setting up, among other things, that, in examining the property with the avowed object of purchasing the same, the complainant went through the laundry, engine room, and other portions of the hotel, saw the monthly statements of business which had been made out for the defendant, asked for and was referred by the defendant to a written inventory of property owned by the defendant in the building and in which appeared the items of machinery hereinbefore referred to, valued at upwards of $7,000, and was assured by defendant that if he should purchase the hotel these items would go with the hotel property. He charges also that defendant said to him that he owned everything in the building with the exception of a little furniture in room 11. Later, having occasion to negotiate new policies of insurance, he discovered for the first time that the machinery was owned by the owner of the building, and, upon informing defendant of that fact, he was told by defendant that he had bought the property from Charles Roe, the former tenant, to which complainant replied that, if the property belonged to the owner of the building, he should insist upon a rebate from the purchase price. He was referred by the defendant to Roe. He further sets out that defendant denies that the said machinery was conveyed to complainant, and refuses to make any allowance or deduction from the purchase price. It is further charged in the bill that there is about $14,000 of the purchase price unpaid, that the notes representing said sum are all in the possession of the defendant, that some reduction should be made from the purchase price on account of the failure of the title to said machinery, and he prays for the following specific relief: That the defendant be enjoined from negotiating or transferring the notes or enforcing the chattel mortgage; that, if it should appear that there is any ambiguity or uncertainty as to whether the bill of sale to complainant included all of the property set forth in the said schedule of machinery, then that the bill of sale should be reformed so as to

truly express the agreement between the parties and so as to show and include all of the property set forth in said schedule of machinery.

Defendant answered the bill, admitting the sale and the execution of the various papers which have been referred to, says that complainant purchased with full knowledge of all the facts pertaining to the machinery, electric light plant, etc., in the house, asserts that he did convey all the title which he (defendant) had in said property, and that his interest was fully known to the complainant at the time of the purchase, denies that there has been any mistake or misunderstanding, and insists that the complainant has a complete and adequate remedy at law. Proofs at considerable length were taken, and a decree was entered dismissing the bill.

It is the contention of complainant that the agreement to sell is an implied warranty of title in the vendor to some machinery, some furniture, some fixtures, in his possession, in the leased building. It is said in the brief:

"We ask this court, as we did the trial court, to point out what machinery did pass."

And again:

"We submit the complainant, Fulwell, is entitled to a decree in this case, that he is entitled to a deduction equal in value to the laundry machinery and electric lignt plant as carried on Brown's books by himself; or at least is entitled to a proper deduction, which deduction should represent such a fair proportionate valuation as shall be placed upon this machinery, or was intended should be placed upon this machinery in the transaction between the parties."

OSTRANDER, J. (*after stating the facts*). The modern general rule, in England and in the United States, is that a sale of personal chattels implies an affirmation by the vendor that the chattels are his, and he therefore warrants the title, unless it appears by the facts and circumstances of the sale that the vendor did not intend to assert ownership, but only to transfer such interest as he might have in the chattel sold. 2 Mechem on Sales, §§

1300–1309; *Croly* v. *Pollard*, 71 Mich. 612, 615. The first difficulty which counsel and the court encounter does not relate directly to the validity of the vendor's title to such property as he owned, but to a specification of the property to which he asserted ownership. It is clear that the written agreement does not specify and does not, by reference, make certain the property which was sold; nor does the chattel mortgage furnish the information. It is a fact to be determined by evidence other than the writings which were made and the possession which the vendor had. Complainant both finds and does not find such specification in the inventory and in the monthly statements which have been mentioned. I say he does not find it here because it appears to be agreed that the boilers, and perhaps some other of the machinery described in the inventory, were so connected with the freehold as to negative the idea that they were chattels separable from the freehold. Upon this subject the parties were permitted to introduce testimony. It is admitted by both parties that there were inquiries and representations with respect to the machinery which the vendor claimed to own, as well as with respect to furniture, etc. It is impossible to harmonize the testimony concerning the representations which defendant made about his ownership of machinery. It will profit no one to set out the testimony. While the case is not free from difficulty, we have reached the conclusion that it was understood by both parties that defendant would not and did not represent that he was owner of the machinery in the building, and that he intended to sell and complainant was satisfied to purchase such title and interest in the property, described generally, as defendant had. In this view of the testimony, it is not material to ascertain what machinery, if any, the defendant owned.

The decree is affirmed, with costs.

BLAIR, C. J., and GRANT, MONTGOMERY and HOOKER, JJ., concurred.